COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-08-010-CV

 

 

ROYCE SANDERS                                                                APPELLANT

 

                                                      V.

 

COMERICA
BANK, INC.                                                      APPELLEE

D/B/A COMERICA BANKCTEXAS                                                            

 

                                                  ------------

 

       FROM
THE COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

I.  Introduction

Appellant Royce Sanders
appeals the summary judgment entered against him and in favor of Appellee
Comerica Bank, Inc. d/b/a Comerica BankCTexas (AComerica@).  We will affirm.

II.  Factual and Procedural Background








Sanders sold his construction
company, Legend Construction, Inc., to David Chaney.  In connection with the sale, Sanders and
Chaney signed a March 13, 2001 security agreement giving Sanders a security
interest in collateral described as ACertificate of Stock No. 5, representing 400 shares of stock of Legend
Construction, Inc., a Texas corporation, and all inuring to the shares of stock
of said corporation, tangible and intangible.@  Sanders filed a March 30, 2001
financing statement covering the following collateral:  A400 Shares of common stock of Legend Construction, Inc., a Texas
corporation Certificate No. 5.@  Approximately three years
later, Sanders filed a March 29, 2004 financing statement purportedly covering
thirty-three pieces of construction equipment and some office assets.  This second financing statement is not signed
by the debtor.

Subsequently, Comerica made a
loan to Legend.  In connection with the
loan, Comerica requested that Sanders sign, and Sanders did sign, a
Subordination Agreement, subordinating any interest he had in the  construction equipment to Comerica=s interest.  Legend defaulted in
its payments to Comerica, and Comerica foreclosed on the construction equipment
collateral securing its loan to Legend. 
The proceeds from the foreclosure sale of the construction equipment
exceeded Legend=s
indebtedness to Comerica by $55,860.00. 
Comerica paid this surplus to Legend.








Sanders sued Comerica
claiming that the $55,860.00 surplus should have been paid to him.  Comerica moved for a traditional summary
judgment alleging as one of its grounds that Sanders Afailed to obtain a security agreement regarding the Construction
Equipment and, thus, held no perfected security interest in the Construction
Equipment.  Sanders, thus, had no right
to the surplus.@  The trial court granted Comerica=s motion for summary judgment, and Sanders perfected this appeal.  In two issues, Sanders claims that the trial
court erred by granting summary judgment for Comerica.

III.  Standard of Review

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798.

IV.  Sanders Possesses a Security Interest Only in
Stock








In his first issue, Sanders
claims that the trial court erred by granting Comerica summary judgment on the
ground that Sanders held no security interest in the construction
equipment.  The summary judgment evidence
establishes that the security agreement signed by Sanders and Chaney created a
security interest for Sanders only in the collateral described as ACertificate of Stock No. 5, representing 400 shares of stock of Legend
Construction, Inc., a Texas corporation, and all inuring to the shares of stock
of said corporation, tangible and intangible.@  The March 30, 2001 financing
statement filed by Sanders again described the collateral as A400 Shares of common stock of Legend Construction, Inc., a Texas corporation
Certificate No. 5.@ 








Sanders argues that the
description of the collateral in the security agreement at least creates a fact
issue as to whether it created a security interest in the construction
equipment ultimately sold by Comerica. 
But the law is clear that in order to create a security interest, the
security agreement must describe the collateral with sufficient particularity
to identify it.  See Tex. Bus.
& Com. Code Ann. ' 9.108(a)
(Vernon 2002); see also Orix Credit Alliance, Inc. v. Omnibank, N.A.,
858 S.W.2d 586, 593 (Tex. App.CHouston [14th Dist.] 1993, writ dism=d) (holding collateral description in security agreement of Aproperty . . . wherever located@ insufficient to create security interest in intangible property); see
also Unicut, Inc. v. Tex. Commerce Bank-Chem., 704 S.W.2d 442, 444 (Tex.
App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.) (discussing sufficiency of security agreement=s description of collateral). 
By statute, a collateral description of Aall the debtor=s assets@ or Aall the
debtor=s personal property@ does not reasonably identify the collateral.  Tex. Bus. & Com. Code Ann. ' 9.108(c).  Thus, we hold that
the description of the collateral in the March 13, 2001 security agreement
signed by Sanders and Chaney as a matter of law did not create a security
interest in the construction equipment; it identified as collateral only
Certificate of Stock No. 5.

We nonetheless look to the
balance of the security agreement to determine whether it could be construed in
Sanders=s favor as identifying the construction equipment as collateral
somewhere in the agreement other than under the title ACollateral.@  Another category of information in the
security agreement is titled, AClassification of Collateral,@ and it lists the classification as AStock, Chattel Paper, Assets and General Intangibles.@  Although identification of
collateral by classification may be permissible, the security agreement at
issue did not include the classification of Aequipment,@ which is
the general classification of the construction equipment collateral at issue.  See id. ' 9.102(33).  Thus, we cannot
agree that any language in the security agreement raises a fact question on the
identity of the collateral to which Sanders=s security interest attached; a security interest was created only in
Stock Certificate No. 5.








Sanders further argues that
the subsequent, March 29, 2004 financing statement purportedly covering
thirty-three pieces of construction equipment and some office assets gave him
the right to the $55,860.00 surplus generated by Comerica=s sale of the construction equipment. 
But a financing statement  is
ineffectual absent an executed document creating a security interest.  See 
Crow-Southland Joint Venture No. 1 v. N. Fort Worth Bank, 838 S.W.2d
720, 724 (Tex. App.CDallas 1992,
writ denied) (explaining that a financing statement merely serves to notify
third parties that debtor=s property
is or may be encumbered); Mosley v. Dallas Entm=t Co., 496 S.W.2d 237, 240 (Tex.
App.CTyler 1973, writ dism=d) (recognizing financing statement alone is ineffectual to create
security interest absent an executed security agreement).  Thus, the March 29, 2004 financing statement
provided Sanders with no further security interest than that reflected in the
March 13, 2001 security agreement.  See
Crow-Southland Joint Venture No. 1, 838 S.W.2d at 724; Mosley,
496 S.W.2d at 240. 

Finally, Sanders argues that
Comerica knew when it sold the equipment that Sanders claimed an interest in it
because the March 29, 2004 financing statement was on file and because Comerica
asked Sanders to execute the Subordination Agreement.  Neither Comerica=s factual knowledge of Sanders=s filing nor Comerica=s request that Sanders sign the Subordination Agreement, however,
change the legal effect of the security agreement, which creates a security
interest for Sanders in only Certificate of Stock No.5.  








For these reasons, we
overrule Sanders=s first
issue.  The trial court correctly granted
summary judgment on Comerica=s contention that it had conclusively established that Sanders failed
to obtain a valid security interest in the construction equipment.

Because the trial court=s order granting summary judgment does not state the ground on which
it was granted, Sanders was required on appeal to negate every possible ground
asserted by Comerica for summary judgment. 
See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381
(Tex. 1993).  Because we have held that
the trial court properly granted Comerica summary judgment on the ground that
Sanders failed to obtain a valid security interest in the construction
equipment, we must affirm the trial court=s summary judgment and need not address Sanders=s other challenge to the summary judgment.  See, e.g., 
FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000). 

V.  Conclusion

Having overruled Sanders=s first issue and having held that Comerica conclusively established
its right to summary judgment, we affirm the trial court=s judgment.  

 

SUE WALKER

JUSTICE

 

PANEL:
DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED:
December 4, 2008